STAPLES, J-,
delivered the opinion of the court.
The first ground of error assigned in the petition for an appeal is the refusal of the court below to allow the appellant compensation for an alleged deficiency in the land. It is claimed that the deed of Harman and wife conveyed to the appellee four hundred and twenty-nine and a half acres; that thirteen acres were afterwards transferred to the Valley railroad company, leaving only four hundred and sixteen acres in the tract; whereas the deed to the appellant is for four hundred and twenty-two acres. The survey made in the cause shows, however, there are four hundred and twenty acres, two roods and thirty-four poles in the tract, being a deficiency only of one acre, one rood and five forty-fifth poles; and for this the appellant has been allowed compensation by the decree of the circuit court. The accuracy of this survey has not been ^impeached by the appellant. The mistake was probably made by the assessor in his estimate of the quantity transferred to the railroad company. Instead of thirteen acres it ought to have been nine. It is very certain the appellant gets all the land for which he has paid, or has contracted to pay. This ground of error is therefore not well taken.
The next error assigned is in failing to allow the appellant compensation for so much of the land as is occupied by the Valley turnpike, a McAdam road running from Staun-ton to Winchester. It is insisted that the appellant by the terms of his contract is entitled to all the land purchased by him, within the metes and bounds specified in his deed, free from all incumbrances of every description, and that the road in question is a perpetual easement or incumbrance upon the land.
The deed to the appellant is not in the record, and we have no means of ascertaining the nature of the covenants contained j in it. If it be a mere covenant of warranty | of seisin, or of a good right to convey, ac- [ cording to all the authorities it is not broken j by the existence of a highway upon the land. 2 Lomax Digest, 347; Whitleck v. Cook & wife, 15 John. R. 483; Rawle on Covenants of Title, p. 80. If on the other hand, the deed contains a covenant against incumbrances, the ques- | tion is not so free from difficulty. In Massachusetts and in most of the New England states, it is held that a highway _ constitutes a breach of the covenant against in- ( cumbrances. In Pennsylvania, Wisconsin and other states, the contrary doctrine prevails. In Whitleck v. Cook & wife, 15 John. R. 483, 490, the deed contained no covenant against incumbrances, but the reasoning of the court is broad enough to apply to covenants of every description. Spencer, J. said: • “It must strike the mind with surprise that a *person who purchases a farm through which a public road runs at the time of purchase, and had run so long before, who must be presumed to have known of the existence of the road, and who chooses to have it included in his purchase, shall turn around on his grantor and complain that the general covenants in the deed have been broken by the existence of what he saw when he purchased, and what must have enhanced the value of the farm. It is hazarding little to say that such an attempt is unjust and inequitable, and contrary to the universal understanding of both vendors and purchasers. If it could succeed a floodgate of litigation would be opened, and for many years to come this kind of action would abound.”
In Patterson v. Arthurs, 9 Watts R. 152, the purchaser claimed an abatement of the purchase money because of a public road which passed over the lots sold. The court expressed its surprise that a highway should ever have been imagined an incumbrance within the covenant, and its belief that it had been the universal understanding of both sellers and purchasers in Pennsylvania, that the covenant against iricumbrances did not extend to public roads. Although a public highway no doubt is in many instances an injury instead of a benefit to the holder or owner of the land upon which it is located, and therefore tends to lessen its value in the estimation of the purchaser, yet it is fair to presume that every purchaser before he closes his contract for his purchase of land, has seen it and made himself acquainted with its locality and the state and condition of it; and consequently if there be a public road or highway open and in use upon it, he must be taken to have seen it and to have fixed in his own mind the price he was willing to give for the land with reference to the road, either making the price less or more as he conceived *the road to be injurious or advantageous to the occupation and enjoyment of the land.
We are of opinion that these views of the New York and Pennsylvania courts are in accord with the general understanding and usage in Virginia on this subject. With us it has never been supposed that the vendor in conveying his land is required to make an express reservation or exception with respect to the highway upon the tract, or else to submit to an abatement of the purchase money. A public highway is generally regarded as a benefit to the land; and whether so or not, the purchaser is presumed to have taken it into ^consideration and to have fixed the price with reference to its supposed advantages or disadvantages. Tf it was once understood as the doctrine of this court that the purchaser is entitled to an abatement or damages for ail easement or in-cumbrance of this kind, in the language of *328 the New York court, it would open the floodgates of litigation in. this state.- Besides it is difficult to see how the damages in'such case can be properly estimated. A public highway is a mere easement. It does not take away the right of freeholder in the soil. That continues in the owner in the same manner it was before the highway was established, subject only to the easement. The owner still retains his property in the mines, quaries, springs of water, timber and earth not incompatible with the public right of way. He may maintain trespass, ejectment, or waste in 'respect to the same. And upon the abandonment or discontinuance of the way the property and right of enjoyment revert to the proprietor of the soil. Washburn on Easements and Servitudes, 228; Warwick & Barksda-le v. Mayo, 15 Gratt. 545.
These elements must of course be taken into consideration, as also the peculiar benefits the owner derives from the location of the road, in estimating, the *damages or abatement to which the purchaser may be entitled. It is obvious that theáe contingencies were never contemplated by the parties, and the most reasonable inference is, that they contracted with reference to the then condition and'state of the property as it appeared and was known to both. This ground of error is therefore overruled.
The next error assigned is, that at the date of the conveyance to the appellee, Eve, there were unsatisfied judgments to a large amount against Harman, constituting liens upon the land, which ought to have been removed before any decree for a sale. The commissioner to whom the whole matter was- referred for investigation, reports judgments against Harman unsatisfied, and constituting liens on the land to the amount of nine thousand eight hundred and fifty-five dollars and eighty-five cents. The larger portion of these judgments are upon debts for which Harman was bound only as surety, with perfectly solvent principles. One of the judgments, amounting to more than five thousand dollars, the commissioner reports if not already,paid will certainly be paid out of the assets of J. Marshall McCue; so that the liens by judgment will not exceed four thousand dollars. To satisfy these, the commissioner reports real estate belonging to Harman in Augusta county of the value of $1&2,000, and the testimony shows there is real property in the city of Staunton of the value at least $20,000. The learned counsel for the appellant insists that this property is shingled over with judgment liens and trust deeds amounting to more than double its value. The true inquiry, however, is as to the liens upon the land at the time of the conveyance to the appellee and his wife in October, 1866. No liens subsequently acquired against Harma'n could effect the lands in the hands of the appellee, or those claiming under him. The. report *of the commissioner already adverted to, showing these liens, was made at the request of the app diant. The examination upon which that report was founded was at his instance, and he has offered no evidence, documentary or otherwise, invalidating the statements of the commissioner. It must be assumed, therefore, that there is real estate whose value is ten times the amount of the judgments -which must first fee subjected before the land ©f appella-nt can be touched. Besides this, it is provided in the decree that the court will- see to the proper disbursement of the purchase money. The purchaser of the land will also have in his own hand the deferred instalments of the purchase money, falling due in six, eighteen, thirty, and forty-two months, for his own indemnity, in the event the parties primarily bound for the debts shall become insolvent, and the real estate of Harman shall be insufficient to satisfy the judgments. Under such circumstances the most timid purchaser could not have the slightest apprehension of a title acquired under the decree of the court.
This disposes of all the errors assigned in the petition and in the argument of the appellant’s counsel before this court. For the reasons stated, we are of opinion the decree of the circuit court is plainly right, and must be affirmed.
Decree affirmed.